Cappa involves two severe impairments. One is a breathing problem and one is a mental impairment. She was terminated in January 1997 when they were terminating everybody who had abused and so forth. Now this claimant must use, she has such a breathing problem that her treating physician ordered her to get one of these rolling oxygen tanks. I went to interview her at home and I did see the tank. I would say it's about this high and it has to be plugged in and she's on that most of the day. She goes out for a short period and then she uses an appliance in her nose. Now at the first hearing... Let me just ask a question about the tank. Is there any evidence in the record of how often your client used the oxygen tank? She uses the oxygen tank, she testified, most of the day, which would be probably about six hours of an eight hour day. She didn't take it to her psychological evaluation? No. She had this appliance in her nose. You know, it would have helped a lot. Well, the appliance doesn't do anything unless it's connected to something. The doctor said it wasn't connected to anything. I mean, you can put anything in your nose, but if it's not connected to oxygen, what good does it do? I don't know. She did testify that when she goes for these short periods, this appliance in her nose... It wasn't a short period. She was taking all these tests with psychiatrists and everything. She had the thing hanging in her nose all right, but it wasn't connected to oxygen. And so, you know, you can hang that tube that feeds oxygen from your nose, but I don't quite understand how that makes any difference. Well, I think that the oxygen tank does pour more oxygen so that she can breathe. And I don't think that her treating physician would have ordered the rolling oxygen tank to be used most of the day if she didn't require it. Did you give us the record of the treating physician making that order? Pardon? Did you give us the record that demonstrates the treating physician? Did you give this court the record that demonstrates that the treating physician actually made that particular order? To demonstrate what? That the treating physician required her to be on a large oxygen tank plugged into the wall all the time. In order to breathe, the doctor ordered it. I hear you saying that. I said, did you give us any record that so states? Is there anything in here that shows that, that says that? I'm quite sure she testified to that. And I did bring out in the evidence that the doctor ordered it and it was paid for by, I think, Medicaid. Did you submit any doctor's records to that effect? Dr. Mekelberg. I don't think that you submitted his record that demonstrated that he ordered to have a large tank plugged in all the time. Is that in the excerpt she gave us? And I'm quite sure that it's in there that it was paid for. Found where? AmeriCare paid for it. I mean, that's where it was ordered. What I'm asking, counsel, is where is it to be found in our excerpts of record? I know it was in there that it was paid for and the doctor Mekelberg ordered it. It's in the record. I understand. And at the first hearing, the ALJ did find that the breathing problem, the chronic obstructive pulmonary disease, was a severe impairment. Then when the case went back to the regional counsel, the problem with what you're stating is we don't have in our excerpts the opinion of the administrative law judge. We don't have the appeals counsel order of remand, or we don't have the administrative law judge's most recent opinion. It makes it very difficult to decide this case, particularly when in your briefs you don't cite to the record. And maybe it's because the records, the excerpts of record aren't in our materials at all. Well, the excerpts of record under our rules, which you prepare, are supposed to contain what we need in order to decide the case. And they don't do that. It may be in the administrative record, but that's very large. There's only one of them, which is why our rules provide that in the excerpts that you are responsible for filing, you are to give us copies of what we need so that when we are in our offices, there are three of us, we can see what it is you rely on. We don't have that. It's in the administrative record. May I bring mine here later on today and have it brought to you? No, we've already done a great deal of work to try to find those documents in the administrative record. But it's your obligation to give it to us in the excerpts. I'll bring it. No, no, no, no. You misunderstand. Have you read our court rules? Have I what? Read the rules on appeal of the Ninth Circuit. I guess so. Well, you ought to read them again, and then you'll see what you're supposed to give us in the record. I assume that when I – that the administrative record was the official record and went all the way through through the different appeals, because they have it in district court. It may indeed. But, you know, despite that, you also are required to file briefs with this court, and they're supposed to refer to things, and those things are supposed to be found in the excerpts. I'm quite sure that – well, in the excerpts, I just have the district courts. Precisely so, and that's what we're saying. You need to give more to this court in the future. In the future? In the future. Please do that. I'm sorry. I assume that if I had it at district court, that the record went right up to the appeals council, and in there they would have had that the doctor ordered this rolling tank, and that it was purchased from AMERICARE, A-M-E-R-I-C-A-R-E, Americare. Well, now you will know. And the reason for these rules is these records are so huge that we want to save the time of the court, save the printing of all of this, so that when you write your brief and you make a statement, you cite to the excerpts of record. It makes it all much more smooth. Even though in the big world out there, the record exists, we need you to bring it to us in the form that we can use it. May I go on? Okay. Okay. The AL just regarded, and the case was sent back for the ALJ to develop the mental impairment. At that time, the claimant's father had just passed away. I wrote to the judge and asked him to continue it. The judge refused to continue it. He said he would only continue a case if the funeral was the day of the hearing. And so I tried to cross-examine the VE at that time and bring out the fact that there was this rolling tank and she had to be on this oxygen tank during the day. The ALJ cut me out. He wouldn't let me cross-examine on that issue at all at the supplemental hearing. And when the case went up to district court, the magistrate judge stated, when I brought out that that severe chronic obstructive pulmonary disease had not been brought up, the magistrate judge said it's of no import. Well, to me, in order to breathe, in order to live, you've got to breathe. And if she needed this oxygen tank, I think it's quite important. Now, regarding the mental impairment, this claimant hears voices. She says an angel is watching over her every day and so forth. Both the treating psychiatrist and the consultative psychologist found that she was suffering from a major depression. What the commissioner is stating is the psychologist stated she could do some simple repetitive tasks with her hands, although her hands sometimes become swollen. What the psychologist didn't know is that she also has a severe physical impairment of being able to breathe during the day. She also has to lie down, and that's brought out in the evidence because she's fatigued all the time. Now, when you consider a three-foot rolling tank that she has to sit with Nick all day long, and it's plugged into an outlet, one wonders how she could get to a job. I tried to bring that out in the evidence before the V.E., and one of the V.E.s stated, well, no reason why she couldn't drag that tank along and do the laundry work. Well, it's not realistic. What employer, even though this is not usually brought out in workers' compensation in Social Security cases, one wonders how an employer would employ anybody that has to have a rolling tank most of the day. The claimant could re-injure herself or she could injure other people. So what we have here really are two severe impairments which either simply are in combination, meet or equal one of the listed impairments. Thank you, Counsel. You have used all your time. Thank you. Good morning, Your Honor. Donna Anderson for the Commissioner of Social Security. This is a case in which, as Counsel has indicated, Plaintiff Appellant had been receiving benefits for a number of years, since 1988 to 1997, based in part on substance abuse. As of 1997, she was terminated as the state agency indicated that, or found that her impairment was primarily due to substance abuse, and she had the burden of coming forth with proof that she was disabled based on other impairments. Is there evidence in the record that Dr. Meckleberg said she needed a three-foot oxygen tank? Like you, I have looked and looked and looked for a prescription from Dr. Meckleberg, and the only thing that I was able to identify was an invoice for the tank. Thus, my conclusion is, as the ALJ found, that there was no evidence in the record of the frequency that she had to use this tank, nor the concentration of the oxygen or anything like that. In light of that and the FEV values, which were below listing level, and evidence that during her psychological exam she didn't use the device, she had it in her nose, but she did not use it, the ALJ found that, number one, it was not listing level, and based on the BE testimony, both BEs actually did give some testimony, albeit ambivalent, about her ability to work despite a pulmonary impairment. Both VEs were asked questions by counsel about the ability of her to work despite this rolling tank, and both VEs indicated that they were not sure about the hiring practices of employers and whether this tank would pose a problem. But the issue here is whether the impairment, the medical findings, would enable the person to perform the work. And considering the fact that she, in contrarian to her testimony, did not use it 24 hours a day because she didn't use it during her psychological exam, and there was, the plaintiff did not satisfy her burden of producing evidence indicating how often she did have to use it, there was nothing outside of her testimony to support her allegation that she had to use it all day, every day. Substantial evidence, Your Honors. Well, she never said that she had to use it all day, every day. Well, she said she was on it all day at home, and then when she was out, which because she had to take methadone, I think, every day, she left the house every day with her little rolling tank. But she was on it most of the day. Most of the time, rather than... As you indicated, there is no evidence in the record other than her testimony to indicate how long or often she had to use the tank. As I said before, we have no evidence of a treating physician's prescription for that use. And we also would posit that the ALJ fairly and substantially evaluated both the mental and the pulmonary impairments and supported it with substantial evidence. Are there any questions? Thank you, Counsel. The case just argued is submitted for decision. We'll hear the next case for argument, which is Singh v. Ashcroft. Vikram Singh v. Ashcroft.
judges: Schroeder, Dw Nelson, Fernandez